## MATILDA, f. w. c., *v.* AUTREY, et ux.

Prescription is not a good defense to an action for freedom.

Death bed declarations, of one, at whose death a *statu liber* obtains her freedom, made in the presence of a defendant who, when sued by the *statu liber* for freedom, pleads prescription, are admissible, as going to show the origin and nature of possession upon which the plea is based, and also to show the bad faith of the defendant.

C. C. 3457, 3480, 3499.

APPEAL from the District Court of the parish of Monroe, *R. W. Richardson*, J.

*H. B. Esseck*, for plaintiff. *McGuire & Ray*, for defendant and appellant.

SPOFFORD, J. The plaintiff alleges that she is a free woman of color, illegally held in servitude by the defendants.

They answer by a general denial and an averment that the plaintiff is really a slave belonging to them, and "without exhibiting further title" plead the prescription of fifteen years' possession as owners.

The sole issue then is *libera vel non*. This is not an attempt to procure the manumission of a person acknowledged to be still a slave, and the laws of Louisiana regulating that subject are, therefore, foreign to the case.

The plea of *usucaption*, or the prescription by which property is acquired, cannot avail the defendants.

In *Delphine* v. *Devizé*, 2 N. S. 650, it was held that prescription was not a good defence to a claim for freedom. It is true that the decision appears to have been bottomed upon the following text of the Third Partida (Tit. 29, law. 24): "If a man be free, no matter how long he may be held by another as a slave, his state or condition cannot thereby be changed; nor can he be reduced to slavery in any manner whatever, on account of the time he may have been held in servitude."

It is true also that the Spanish laws were repealed by the 25th Section of the Act of 25th March, 1828. *Handy* v. *Parkison*, 10 L. R. 99.

But the text above cited is enunciative of a principle of law, which may exist without positive legislation.

The same principle is also deducible from the text of our Civil Code.

" A possession by violence, not being legal, does not confer the right of prescribing. That right only commences when the violence has ceased." C. C. 3457.

The relation of master and slave while it subsists in fact, implies power on one side and subjection on the other. It is, besides, proved in this case, that violence was employed by the defendants to keep the plaintiff quiet in her apparent condition.

If the defendants should urge that their possession had a lawful and peaceable commencement by reason of the dying request of the former mistress of plaintiff, that they would take charge of her until she was eighteen years of age, and then take her back to Kentucky to be free, they are met by Article 3480 of the Code, which declares that " one cannot prescribe against his own title, in this sense, that he cannot change by his own act, the nature and origin of his possession."

Under the evidence, the defendants cannot have possessed as owners, unless they possessed by violence ; and, in either case, they have not acquired a title sufficient to silence the plaintiff 's claim to freedom, by the prescription of fifteen years.

On the merits, we concur with the District Judge, in the opinion, that the plaintiff was *de jure* free, when she was brought into this State by defendants, as a slave.

She belonged originally to *Richard Baker* of Kentucky. By his last will, admitted to probate in that State, in 1826, he bequeathed her to his wife, *Elizabeth Baker*, for her natural life, and at her death, "to be free to all intents and purposes as if she were free born."

No attempt was made by the defendants to show that there was anything illegal in this bequest, under the laws of Kentucky. On the other hand, the decision quoted from the judicial reports of that State, would seem to indicate that the disposition was valid.

Shortly after the death of her husband, Mrs. *Baker* removed from Kentucky to Alabama, with *Matilda*, who was then a *statu libera*, by the effect of the will probated in the former State. The plaintiff went to Alabama with a vested right to her freedom upon the death of Mrs. *Baker*, who had only a life-estate in her.

We have no reason to doubt the proposition that the courts of Alabama would have recognised the vested rights of the plaintiff. No prohibitory statutes of that State have been offered in evidence derogating from the power of a master to manumit his slave, or restricting the rights of a *statu liber* introduced from another State.

The conduct of the defendants in hurrying away the plaintiff from Alabama immediately after she became free by the death of Mrs. *Baker*, in 1835, and detaining her for so many years in Louisiana, in violation of the trust imposed upon them by Mrs. *Baker*, who told them to carry her back to Kentucky to be free, indicates a desire on the part of the defendants to avoid the tribunals of those States.

Considering that the defendants pretend to no title whatever but a possession based upon a suspicious commencement and continued under suspicious cir-

cumstances, we think the burden was on them to show that there existed some legal obstacle to the recognition of the plaintiff's freedom. This they have failed to do.

The declarations of Mrs. *Baker*, made on her death bed in the presence of *Autrey*, were admissible, as they went to show the origin and nature of the possession upon which the plea of prescription is based, and also to show the bad faith of the defendants.

We do not perceive that the will certified by the clerk of the Hopkins County Court in Kentucky, was a copy of a copy. The record excepted to was, we think, admissible.

There was error in allowing the plaintiff the sum of $1000, for services as claimed in the petition.

The only judgment proper to be rendered upon this branch of the case, was one, not for damages, but for "wages," and, under the pleadings and evidence the prescription of one year, seems to apply to this money demand. C. C. 3499. This would reduce the sum to $100.

It is, therefore, ordered, that the judgment of the District Court be so amended as to reduce the sum therein awarded to the plaintiff for her services to the defendants, from one thousand dollars to one hundred dollars, and that thus amended, the said judgment be affirmed, the costs of the appeal to be paid by the plaintiff and appellee.